Beavors *vs.* Winn and others.

9  189
93  689

9  189
112  804

9  189
121  433

No. 39.—William J. Beavors, ex'r of Lucinda Winn, plaintiff in error, *vs.* William Winn *et al.* adm'rs of Richard Winn, defendants.

[1.] The widow of an intestate is not entitled to have advancements, made by the intestate to his children, brought into hotchpot for her benefit.

[2.] The widow dying in less than one year after administration on the estate of her husband, without having elected to take a child's part of the real estate, her executor cannot recover it after her death.

In Equity, in Hall Superior Court.   Decided by Judge Jackson, on demurrer, September Term, 1850.

The complainant, in his bill, alleged the following facts:   On the 6th day of May, 1847, Richard Winn departed this life intestate, leaving a widow, Lucinda Winn, and sundry children. William and Willis Winn became administrators of his estate. On the 23d of December, 1847, his widow, Lucinda Winn, died, having made a will, of which complainant was executor.   She had, previous to her death, made no election between her dower and a child's part of her husbands estate.

Richard Winn, in his life, had made certain advancements of property or money to his children.   The debts of the estate had all been paid.

The complainant prayed that the administrators of Richard Winn might pay over to him, as executor of the widow, an equal distributive share of the real estate, and also, that the advancements made to the children might be brought into hotchpot, and that he should have them taken into the account for the benefit of his testatrix's estate in computing her share of the personalty.

To this bill defendants demurred for want of equity, and the Court sustained the demurrer, and dismissed as to both the grounds alleged. To which decision complainant excepted.

HILLYER, for plaintiff in error.

DOUGHERTY, for defendants.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] Under the English Statute of Distribution, the widow is not entitled to share in advancements made to children. *Ward vs. Lant, Prec. Chanc.* 182, 184. *Kircuabright vs. Kircuabright,* 8 *Vesey,* 51, 64. *Gibbons vs. Caunt,* 4 *Vesey,* 847. 2 *Black. Com.* 519, *note by Chitty.* 2 *Williams' Ex'rs,* 1070. Whilst this is conceded to be the rule in England, yet it is insisted that it is different under our own Statute of Distribution. The argument is, that in England, she has a distinct provision out of the estate, separate from, and anterior to the children, whilst here, she is entitled to an equal share of the estate with the children. From this provision of our Statute, it is inferred that she, as well as the children, is entitled to share in the advancements. This difference between our Statute and the English Statute does exist. In *Odam et al. vs. Caruthers,* this Court recognized it, and held that the widow and the children are, under our Statute, in equal degree, and are entitled to share equally in the distribution of the estate. 6 *Geo. R.* 40. But it does not follow, that because the widow and children are entitled to share equally in the distribution of the estate, that she has an interest on that account in the advancements. Upon a construction of the Act of Distribution itself, independent of the Act in relation to hotchpot, she is not

entitled to a share in the advancements, when brought in, nor can she compel them to be brought in. The error into which, as it seems to me, the learned counsel has fallen, is in the assumption that the advancement, made by a father to a child, is part of his estate, subject to distribution. If this be true, it would seem to follow, that the Act of 1804 would entitle the widow to her childs part of it. But it is not true—it is not true as to the children. They are not entitled to distribution in advancements made to a brother or sister. I must admit, that so far as this question depends upon *the Act of* 1804, if the children, unadvanced, are entitled to share in advances made to other children, as distributees, the widow must be also ; because, by that Act it is declared, that " the widow and child or children shall draw equal shares" of *the estate* of the husband and father—of the realty, if she elects to take a childs part, as well as the personalty, and of the personal estate, if she takes her dower. But children are not entitled to distribution in advancements, because they constitute no part of the estate of the decedent; and if they are not, then equally the widow is not. The estate subject to distribution is the property belonging to the decedent at his death. A *gift* of property to a child as effectually passes the title out of the parent, as any other mode of alienation. An advance, that is a transfer of property to a child, divests the parent and invests the child with the title. The property is no longer in the father. It is no part of his estate whilst he lives. He cannot revoke the title if he would. The property belongs to the child, and is subject to his debts. So, also, the title passes from the parent in case of a settlement. Clearly, then, it is no part of his estate at his death, and cannot be subject to distribution. The widow being entitled to share equally in the *estate* of the decedent only, by what right does she claim an interest in the advancement? As well might she claim an interest in property of the advanced child acquired by purchase. This view is strongly fortified by the fact, that under no law is the advanced child compellable to bring the portion given to, or settled upon him, back into the common stock, even at the instance of children. Whatever he has got, whether less or more than his propor-

tion of the estate, he can keep—it is his own.    If less, of course he would bring it back, for by so doing only, can he get his full share by the law of hotchpot.    If he chooses, though, not to do so, against his interest, he has the right so not to do.

His creditors, if need be, *perhaps* might compel the return of the advancement into the common stock, in order to get at his full interest in the estate.    If he has been advanced more than his share, he can keep it.    The Statute takes nothing away that has been given to any of the children.    *Edwards vs. Freeman*, 2 *P. Williams*, 443.    2 *Williams' Executors*, 1070.

The right to hold on to what has been given, and that too, under the Statutes, both here and in England, is wholly irreconcilable with the idea of advancements or settlements, being part of an estate subject to distribution.    In all that belongs to the estate, and in nothing else, the widow and the children share equally.    *Thus,* the Act of Distribution leaves the widow and children their interests, both being in the estate and not in the advancements.    The Legislature of 1821, knowing that, by law, the children unadvanced had no power over advancements, and perceiving the great injustice of permitting those children, who had been advanced, to come in notwithstanding, and share equally in the estate of the father, came to the relief of the unadvanced children and passed the Act of 1821.    It is by that Act that they are at all interested in advancements.    That Act provides, that when children have been advanced, or settlements have been made upon them in amount equal to a full share in the estate, they shall have no more ; and when the advance or settlement is not equal to a full share, then they are entitled to so much of the estate as will make the shares or portions of all equal. In this Act, widows are left out.    It makes provision for children *alone.    The widow is left as she stood under the Act of* 1804. The Judges in convention have decided this question, as we now determine it.    A similar decision has been made in South Carolina under the Statutes of that State.    *Wright vs. Wright, Dudley*, 251.    3. *Dessausure*, 199.    *Prince*, 233, 247.

It would seem that if the widow was entitled to share in advancements made to children, children ought to be entitled to

share in settlements made upon the wife during coverture. The rights of the parties ought to be reciprocal; but settlements made upon the wife, during coverture, are no part of the estate, and are unaffected, therefore, by the Act of 1804. Nor does the Act of 1821 at all refer to these settlements; and this is to the widow some compensation for what she loses, by being left unprovided for by the Act of 1821. Upon this point we are with the Court below, as also upon the other question made in this record.

[2.] That other question is this, can the executor of a widow, who has died before the expiration of twelve months from the granting of letters upon the estate of her deceased husband, and who did not, during her life, elect to take a child's portion of the real estate in lieu of her dower, recover a child's portion of the real estate for the benefit of her estate? Dower is an estate or interest which the law devolves upon the widow, independent of her husband, and to the exclusion of heirs and creditors. It is a life estate in one third of the lands of which the husband died seized. Our Statutes, recognizing this right of dower, gives to the widow the privilege of taking, instead of her dower, an estate in fee in a child's portion of the real estate. This privilege she is to exercise, by electing to take the child's portion within twelve months from the granting of letters testamentary or of administration on the estate of her husband. The *privilege* is conferred by the Act of 1804, and the time within which she shall exercise it, and, also, the consequence of failing to exercise it, are declared by the Acts of 1807 and 1841. By the Act of 1807, it is declared, that "it shall be the duty of all widows, within one year after the death of their husbands, to make their election or portion out of the estate of the deceased, and any such widow, so failing to make her election, *shall be considered as having taken her dower or thirds,* and shall be forever after debarred from taking any other part or portion of said estate." *Prince,* 239.

The Act of 1841 does not change this Act of 1807, except, simply, to make the year, within which she is required to elect, to commence *from the granting of letters testamentary, or of administration,* instead of from *the death of the husband.* By the

Statute, the widow has one year within which to elect, and if election is made on the last day of that year, it would entitle her to a child's part or portion. The Statute declares that, failing to elect, she is to be considered as having taken her dower, and shall be debarred all farther or other part or portion of the estate. If, then, at the expiration of the year, she has not elected, she being still in life, she is considered as having taken her dower; so, also, at any other period within the year, up to which period she has made no election, she is considered as, at that period, having taken her dower. At all times within the year, she is, considered, by the terms of the Statute, as taking her dower, unless she has furnished evidence to the contrary, by proof, of having elected to take a child's part. The choice is between dower and a child's part—she chooses to take dower, negatively, by doing nothing—she chooses a child's part, affirmatively, by declaring, in some overt act, susceptible of proof, her choice. If, then, at any time within the year she dies, not having at that time elected a child's part, the conclusion of the law is, that at that time she had elected to take her dower. She is by law a tenant in dower. She can be but that in one way, and that is by declaring her choice, instead of dower, of a child's part. That choice alone can give her another and different estate. If, then, she dies without having made such choice, she dies a tenant in dower. This is our construction of the Act of 1807. Dying a tenant in dower, the dower estate descends to the heirs of her husband. What then has her executor to do with it? Obviously, nothing.

The privilege of election is personal to the widow. She cannot transmit by will. She has not undertaken to do so in this case. The executor claims it by virtue, simply, of his character as executor. It is his duty to administer his testator's estate. A privilege to elect, which is personal to the testator, does not survive to his executor. Her heirs have no interest in the real estate of her husband, because, at her death, she was tenant in dower, and no more. They are interested only in what constitutes her estate at her death. Whether, if the widow had, in her will, declared her election, within the twelve months, such

declaration would not be held sufficient, may admit of some doubt.    The law is silent as to the manner in which the declaration of her choice shall be made.    I should be inclined, at this moment, to the opinion, that an election made in her will, and the will passed to record, within the year, ought to be held sufficient.    The better practice, however, unquestionably is, for the widow to appear before the Court of Ordinary, and there announce her choice, and place it upon the record of that Court.

If the widow fails to elect before her death, the executor cannot elect; for then, there are no two estates between which to choose. The widow chooses between her dower, which is a life estate for her life, and a child's part in fee, but when she dies, her life estate determines.    If the executor can come in after her death, and take the fee, it is not an election between that and dower, but it is an independent appropriation of an estate, in which the widow had no interest, for the benefit of her heirs.    The Statute contemplates no such thing—the widow is alone its beneficiary. Moreover, if the executor may, in this case, take the child's part for the benefit of the widow's heirs, the result is—

1st. That the widow has enjoyed the dower estate.

2d. Her heirs get the fee, in a child's part, and

3d. The heirs or distributees of the husband are defeated in their remainder in fee, in the estate in dower, upon the death of the widow.    These things are in conflict with the law and with the justice of the case.    It is argued that the law gives twelve months to make the election—that the widow died before the year expired, and it may have been her purpose to elect, and from ought that appears, she would have elected, had she lived within the year, and *therefore*, the executor ought now to elect for her.    This reasoning is plausible, but upon examination, evaporates into thin air.    Those considerations, which I have before urged, are conclusive against it.    *Non constat*, that she would have elected had she lived.    Her purpose to do so does not appear, and that which does not appear, does not exist.    The contrary does appear; for by the terms of the law, until she does in fact elect, she is held to have taken her dower.    In this case she did not elect; she is, therefore, held to have taken

her dower. She takes the risk of dying within the year, and she must, at the peril of losing the child's part, elect before she dies.

Let the judgment be affirmed.