# S99G0306. DAVIS v. KAISER FOUNDATION HEALTH PLAN OF GEORGIA, INC.
### (521 SE2d 815)

BENHAM, Chief Justice.

This case presents for consideration the issue left open by this Court's decision in *Duncan v. Integon Gen. Ins. Corp.*, 267 Ga. 646 (482 SE2d 325) (1997): whether this State's public policy of complete compensation prevents enforcement of an insurance policy provision which expressly modifies the complete compensation rule. In *Duncan,* this Court stated the public policy of complete compensation as follows: "Georgia public policy strongly supports the rule that an insurer may not obtain reimbursement unless and until its insured has been completely compensated for his losses." Id. at 647.

The underlying facts of this case are that Davis was injured in an automobile collision and suffered damages in excess of $100,000; that she settled her claim against the other driver for the limits of his policy, $15,000, and collected $85,000 from her own uninsured motorist carrier; that Kaiser Foundation Health Plan of Georgia, Inc. (Kaiser), based on a policy provision, sought reimbursement from Davis

for $40,361.42 it had paid for Davis's medical expenses; and that the trial court in the suit Kaiser filed to enforce that claim awarded summary judgment to Kaiser. On appeal, the Court of Appeals concluded that there was no overriding public policy restricting the freedom of the parties to contract as they wished when the policy involved here was issued. *Davis v. Kaiser Foundation Health Plan of Ga.*, 235 Ga. App. 13 (508 SE2d 431) (1998). Accordingly, the Court of Appeals found permissible a contract provision requiring reimbursement of the insurer without regard to whether the insured was completely compensated,[1] and affirmed the trial court's judgment. We granted the writ of certiorari to review the decision of the Court of Appeals, and posed the following question: Whether the complete compensation rule is applicable to a contract of insurance entered into prior to July 1, 1997, which contract contains an express provision requiring the insured to reimburse the insurer for benefits received as a result of injury or illness caused by a third party or in a motor vehicle accident. Because we conclude that the complete compensation rule is a public policy of this State which is applicable to contracts of insurance entered into prior to July 1, 1997, we reverse the judgment of the Court of Appeals.

The decision of the Court of Appeals was based in part on construction of a statute enacted subsequent to the effective date of the policy at issue, and in part on the dissent in *Duncan*, supra. Key to the Court of Appeals's reasoning that there was no public policy which would void the reimbursement provision was its construction of OCGA § 33-24-56.1, which permits the sort of reimbursement involved here only when the insured has been completely compensated for the loss for which benefits were paid. That statute was enacted at the end of the General Assembly's 1997 session, just a few days after this Court's decision in *Duncan*, supra, and became effective on July 1, 1997. The Court of Appeals noted that the statute itself did not apply here because it postdated the policy involved, but construed the statute for the purpose of determining whether there was, when the policy was issued, a public policy of complete compensation which would void the reimbursement provision.

In its consideration of the statute, the Court of Appeals correctly stated that the legislature must be presumed to be aware of existing law, but then stated that the General Assembly must be presumed to have intended to change the law. 235 Ga. App. at 15. The cases relied upon by the Court of Appeals, *Balest v. Simmons*, 201 Ga. App. 605, 607 (411 SE2d 576) (1991), and *C. W. Matthews Contracting Co. v.*

---

[1] The policy provision in question reads in pertinent part as follows: "Even if the total amount you collect is less than your actual losses from the accident, you must pay us."

*Capital Ford Truck Sales*, 149 Ga. App. 354, 356 (254 SE2d 426) (1979), involved amendments to existing statutory pronouncements. The present case, however, involves a statute enacted as an original matter by the General Assembly shortly after this Court's resolution of a limited aspect of the question of reimbursement of insurers by their insureds. The proper principle to apply in these circumstances is this: "When a section of the Code has been codified from a decision of this court, it will be construed in the light of the source from which it came, unless the language of the section imperatively demands a different construction. [Cits.]" *Sinclair v. Friedlander*, 197 Ga. 797, 798-799 (30 SE2d 398) (1944). Application of that principle would require the conclusion that the legislature intended, when it enacted OCGA § 33-24-56.1, to state the pre-existing law, that the rule of complete compensation is the public policy of this State.

Having found no expression of a pre-existing public policy of complete compensation in OCGA § 33-24-56.1, the Court of Appeals proceeded with its analysis and chose to adopt the rationale of the dissent in *Duncan*. However, the dissent in *Duncan* was written without the benefit of the legislature's enactment of OCGA § 33-24-56.1, which established that the complete compensation rule was the existing law of this State. With the benefit of that legislation and the application of the proper principle of statutory construction, we conclude that the General Assembly was alerted by the decision in *Duncan* to the absence of a clear statement of existing law on the question, and enacted OCGA § 33-24-56.1 to make unmistakable that complete compensation is the public policy of this State.

Having concluded that complete compensation is, and was at the time the insurance policy involved here was issued, the public policy of this State, we must consider whether that public policy overrides the parties' freedom of contract. OCGA § 13-8-2 (a) provides, "A contract which is against the policy of the law cannot be enforced." While it is true that the power of the courts to declare a contract void as contravening public policy should be exercised with great caution and only in cases free from substantial doubt, (*Foster v. Allen*, 201 Ga. 348, 349 (40 SE2d 57) (1946)), we believe this is a suitable case for the exercise of that power. There may have been, when *Duncan* was decided in 1997, a legitimate question concerning the strength and extent of the public policy of complete compensation, but that question was put to rest by the legislature's passage of OCGA § 33-24-56.1. It is now clear that the public policy of this State will not permit insurers to require an insured to agree to a provision that permits the insurer, at the expense of the insured, to avoid the risk for which the insurer has been paid by requiring the insured to reimburse the insurer whether or not the insured was completely compensated for the covered loss.

In *Powell v. Blue Cross & Blue Shield*, 581 S2d 772 (Ala. 1990), the Supreme Court of Alabama was faced with virtually the same situation facing this Court: a medical benefits provider sought reimbursement from its insured for the benefits paid, notwithstanding that the insured had not been completely compensated. There, as here, the policy specifically provided that reimbursement was required even if the insured were not completely compensated. The Alabama Supreme Court reviewed the principles underlying subrogation and reimbursement and concluded that to permit enforcement of an insurance policy provision requiring reimbursement of the insurer even though the insured had not been completely compensated would abrogate the equitable basis for subrogation. Recognizing that some jurisdictions had ruled otherwise, the court held that

the better reasoned rule is that the insurer is *not* entitled to subrogation unless and until the insured has been made whole for his loss. . . . This rule better reflects the underlying equitable principles that give rise to the remedy of subrogation itself, . . . and better reflects the purpose for which one purchases insurance. The very heart of the bargain when the insured purchases insurance is that if there is a loss he or she will be made whole. The cases that originally applied subrogation to insurance contracts did so on behalf of the insurer only after the insured had been fully compensated. These cases never envisioned the use of subrogation as a device to fully reimburse the insurer at the expense of leaving the insured less than fully compensated for his loss. "Where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." [Cit.]

(Emphasis in original.) Id. at 777.

We find the reasoning of the Alabama Supreme Court in *Powell* compelling and adopt it. Combined with our conclusion that the General Assembly's enactment of OCGA § 33-24-56.1 confirms the complete compensation rule as the public policy of this State, that rationale requires us to hold that the insurance policy provision involved in this case is unenforceable as violative of public policy because it required reimbursement without regard to whether the insured was completely compensated. For that reason, the contrary judgment of the Court of Appeals must be reversed.

*Judgment reversed. All the Justices concur, except Fletcher, P. J., who concurs in the judgment only.*

HINES, Justice, concurring.

Although I agreed with the dissent in *Duncan v. Integon Gen. Ins. Corp.*, 267 Ga. 646 (482 SE2d 325) (1997), I join in the opinion in this case because of the legislature's enactment of OCGA § 33-24-56.1. I think that it is reasonable to conclude that the enactment was, at least in part, a direct response to the questions raised by *Duncan*. That being so, it must be presumed that the legislature intended to adopt the principles of law announced in *Duncan*. *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 93 (1) (327 SE2d 188) (1985). The *Duncan* majority rested on policy considerations. And the legislature has confirmed the implicit finding of Georgia's overriding public policy of complete compensation.

I am authorized to state that Justice Sears joins in this concurrence.

DECIDED OCTOBER 12, 1999.

*Larry R. Wight, Patrick J. Gibbs,* for appellant.
*Dennis, Corry & Porter, Grant B. Smith, John D. Dixon,* for appellee.
*Reynolds & McArthur, Charles M. Cork III,* amicus curiae.